IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KESHIA STRAGRATAINO, o/b/o C.C., :
:
                        Plaintiff, :                    CIVIL ACTION NO. 17-5520
:
            v.                     :
:
ANDREW M. SAUL, Commissioner of    :
Social Security Administration,[1]  :
:
                        Defendant. :

## ORDER

**AND NOW**, this 25th day of November, 2019, after considering (1) the complaint (Doc.

No. 3); (2) the answer to the complaint (Doc. No. 11); (3) the administrative record (Doc. No. 10);

(4) the plaintiff's brief and statement of issues in support of her request for review (Doc. No. 12);

(5) the defendant's response to the request for review (Doc. No. 13); (6) the plaintiff's reply brief

(Doc. No. 15); (7) the report and recommendation filed by United States Chief Magistrate Judge

Linda K. Caracappa (Doc. No. 16); (8) the plaintiff's objections to the report and recommendation

(Doc. No. 17); and (9) the defendant's response to the plaintiff's objections (Doc. No. 19);

accordingly, it is hereby **ORDERED** as follows:

1.      The clerk of court is **DIRECTED** to **REMOVE** this matter from civil suspense

and **RETURN** it to the court's active docket;

2.      The plaintiff's objections to the report and recommendation (Doc. No. 17) are

**OVERRULED**;[1]

3.      The report and recommendation (Doc. No. 16) is **APPROVED** and **ADOPTED**;

---

[1] Andrew M. Saul was sworn in as the Commissioner of the Social Security Administration on June 17, 2019, for a six-year term that expires on January 19, 2025. *See* https://www.ssa.gov/agency/commissioner.html (last visited August 12, 2019). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Commissioner Saul as the defendant in this action.

4.      The plaintiff's request for review is **DENIED**;

5.      The final decision of the Commissioner is **AFFIRMED**; and

6.      The clerk of court is **DIRECTED** to mark this matter as **CLOSED**.


BY THE COURT:



/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] This court's review of the contested portion of the report and recommendation is plenary. The court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). "Review of a final decision of the Commissioner of Social Security, however, is limited to determining whether the decision is supported by substantial evidence." *Abney v. Colvin*, Civ. A. No. 13-6818, 2015 WL 5113315, at *3 (E.D. Pa. Aug. 31, 2015) (citations omitted). "Substantial evidence is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). In determining whether substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own conclusion for that of the ALJ. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

The plaintiff raises two objections to Judge Caracappa's recommendation that this court deny her request for review. First, she argues that the ALJ failed to specifically explain his credibility determinations, and Judge Caracappa did not evaluate this failure. Pl's Objs. at 1. Second, the plaintiff argues that Judge Caracappa erred in upholding the ALJ's decision despite the ALJ failing to find C.C.'s "severe impairments of oppositional defiant disorder ["ODD"], mood disorder, and conduct disorder" to be severe impairments. Pl's Objs at 5. The court addresses each of these objections in turn.

The plaintiff's first objection relates to Judge Caracappa's determination that the ALJ properly made valid credibility determinations. Pl.'s Objs. at 1–5. The plaintiff objects to the credibility analysis by contending that the "ALJ decision is not clear on just why the ALJ adopts the teacher's questionnaire and Dr. Murphy's observations on the child's behaviors, while the child actually was also evaluated by numerous other experts who assessed the child very differently." *Id.* at 3. The plaintiff notes that "the ALJ must indicate specifically WHY he makes his determinations of credibility, and the basis must be there." *Id.* at 5 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1984).

The court agrees with Judge Caracappa's reasoned decision that "[t]he ALJ's decision as a whole illustrates that the ALJ analyzed the relevant and probative evidence and explained his decision sufficiently to permit meaningful judicial review." R&R at 17.  The court also agrees with Judge Caracappa's reasoned decision that the ALJ conducted the required credibility analysis for two reasons. First, the ALJ's decision specifies why he makes his determinations of credibility and the basis for them. For example, the ALJ explained that he "has accorded significant weight to these teacher assessments, as Ms. Appleman worked closely with the claimant and certainly had special insight regarding his daily functioning. Moreover, what she notes is generally consistent with the clinical/mental status findings and professional observations documented in Dr. Murphy's recent evaluation (Exhibit 26F)." *See* Decision at 10, Doc. No. 10-2. Second, while the plaintiff argues that "[i]f the ALJ is mischaracterizing the record (intentionally or inadvertently), it is the Court's job to review this issue and to remand, when appropriate, for further consideration," this court finds that Judge Caracappa is correct in that the court is not permitted to reweigh the evidence. *Id.* at 5. The ALJ is responsible for resolving conflicts in the evidence and determining credibility and the relative weights to be given to the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). As Judge Caracappa correctly found, "[a]lthough the ALJ did not specifically state that plaintiff's mother was not credible, at several points in the opinion the ALJ noted plaintiff's mother's reports and juxtaposed her accounts with other evidence." *Id.* at 17. Therefore,

while the plaintiff objects because she believes that the ALJ should have believed her testimony over the findings of C.C.'s teacher and school psychologist, Judge Caracappa is correct that the ALJ did made the necessary credibility determinations to reach the results that he did.

Regarding the plaintiff's second objection, she argues that the ALJ failed to articulate why C.C.'s ODD, mood disorder, and conduct disorder did not meet the criteria of Listing 112.08. Pl's Objs. at 5–6. Specifically, the plaintiff claims that "the Magistrate should have required more from the ALJ in evaluating whether the child's mood disorders, oppositional defiant disorder, and conduct disorder, met the Listings [because] [i]t is not enough to run through allegations made; a decision must state why the ALJ believes as he does when a claim is denied." *Id.* at 7. After reviewing this objection, the record, and the report and recommendation, the court agrees with Judge Caracappa's reasoned analysis finding that, although the ALJ failed to specifically list ODD, mood disorder, and conduct disorder as severe impairments, the failure was harmless because the ALJ considered these impairments throughout the opinion and completed the sequential analysis required under federal regulations. *See* Decision at 4–17; R&R at 9–13.

To find that an individual suffers from a disability, an ALJ must determine that the individual has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). As it pertains to minors, this determination is guided by a three-step inquiry in which the plaintiff bears the burden at each step. *See* 20 C.F.R. §§ 416.912(a) (placing burden on claimant); 20 C.F.R. § 416.924(a) (setting forth steps). The ALJ initially examines whether the minor engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the minor is not engaged in substantial gainful activity, then the ALJ must evaluate whether the minor had a "severe" impairment or combination of impairments. *Id.* Finally, if the ALJ finds that the minor suffers from a severe impairment, the ALJ evaluates whether the minor has "an impairment(s) that meets, medically equals, or functionally equals the listings." *Id.*

In this case, the ALJ proceeded beyond steps one and two, finding in the plaintiff's favor on both steps. At step three, the ALJ found that the plaintiff's "history of oppositional defiance . . . [did] not rise to the level of severity necessary to meet or equal listing 112.08." Decision at 5. Thus, Judge Caracappa correctly determined that "[b]ecause the ALJ found in plaintiff's favor at step two and continued with the sequential evaluation, even if the ALJ erroneously concluded that plaintiff's ODD, mood disorder, conduct disorder, and Perthes disease were non-severe impairments, any error was harmless because the ALJ considered these impairments later in the opinion." R&R at 10; *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("[B]ecause the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").

The plaintiff nonetheless contends that "[a]lthough the ALJ states he considered whether the record meets the Listing at [1]12.08, there is *no discussion in the decision regarding why this is so*. The ALJ apparently has only stated that these important diagnoses do not meet listings, without explaining why (R.19)." Pl.'s Objs. at 6. However, Judge Caracappa again correctly concluded that the ALJ's decision provided adequate reasons. For example, when it comes to Listing 112.08, the ALJ found that:

> As to the claimant's history of oppositional defiance this issue does not rise to the level of severity necessary to meet or equal listing 112.08 for personality disorders because it is not manifested by pervasive, inflexible, and maladaptive personality traits, which are typical of her [sic] long-term functioning as evidenced by deeply ingrained, maladaptive patterns of behavior associated with: seclusiveness; pathologically inappropriate suspiciousness or hostility; oddities of thought, perception, or speech; persistent disturbances of mood or affect; pathological dependence, passivity, or aggressiveness; intense and unstable interpersonal relationships and impulsive or exploitative behavior; or pathological perfectionism and inflexibility.

Decision at 5. Therefore, there is no merit to the plaintiff's objection that the ALJ did not give any explanation for his conclusions or to her objection that Judge Caracappa should have required more from the ALJ in evaluating whether the child's mood disorders, oppositional defiant disorder, and conduct disorder, met the listings.

The plaintiff also claims that a "review of the ALJ decision shows that the ALJ did not fully consider the oppositional defiant disorder or conduct disorder when he assessed the domains of interacting with others, completing tasks, or caring for himself. . . . A child with the behaviors [C.C.] exhibits does qualify for disability when the proper assessment of ALL OF THE RECORDS is considered." Pl.'s Objs. at 7. Again, this court finds that the plaintiff's request to reweigh the evidence to credit the mother's testimony more is not permitted on substantial evidence review. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

Lastly, the plaintiff once more takes issue with the fact that Judge Caracappa "concludes in the Report that the ALJ did not specifically state whether the claimant's mother is credible or not, but she suggests that the decision is acceptable because the ALJ made findings that are 'specifically developed' for review." Pl.'s Objs. at 8. The plaintiff argues that Judge Caracappa "has applied a much broader level of acquiescence that [sic than] the rule of law permits." *Id.* The plaintiff cites *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.2d 112, 118 (3d Cir. 2000), which cites *Clifton v. Charter*, 79 F.2d 1007 (10th Cir. 1996), as an example of when a court of appeals set aside an ALJ's determination because the ALJ "merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment," without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning. *Clifton*, 79 F.2d at 1009; Pls. Objs. at 8. The plaintiff argues that "[s]imilarly, in this case, the ALJ has shown what evidence he relies upon, but has not directly addressed why he rejects the testimony of the mother, and why he overlooks the reports that show this child is much more impacted by behaviors and mental health issues that [sic] the decision indicates." Pl.'s Objs. at 8. The court finds that the ALJ has satisfactorily addressed why he rejected some of the testimony of the mother and why he preferred certain reports over others.

Concerning the mother's testimony, the ALJ, after going through many of the mother's statements, found that "the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Decision at 7. Later in his decision, the ALJ explains that "[w]hile the claimant's mother has alleged the claimant has frequent accidents, a pediatric record dated September 28, 2015 reflects the claimant was doing well with no concerns noted (Exhibit 9F/4). Bladder and bowel concerns were denied . . . ." *Id.* at 8. Unlike in *Clifton*, such examples demonstrate that the ALJ in this case did indeed indicate why he preferred certain reports and testimony over other evidence in the record. Therefore, the court overrules the plaintiff's objections with respect to Judge Caracappa's level of acquiescence to the ALJ report.